UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY  FILED
DOC #:_____
DATE FILED:__   8/5/2014
```

LUIS PAULINO RODRIGUEZ,

                                        Plaintiff,                    13-CV-03643 (PAC)(SN)

                    -against-                                         REPORT AND
                                                                     RECOMMENDATION

WARDEN, METROPOLITAN CORRECTIONAL
FACILITY and DR. BUSSANICH, clinical director
of Metropolitan Correctional Center,

                                        Defendants.

----------------------------------------------------------------------X

SARAH NETBURN, United States Magistrate Judge.

TO THE HONORABLE PAUL A. CROTTY:

        Luis Paulino Rodriguez, proceeding *pro se*, brings this action pursuant to Bivens v. Six

Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971),[1] alleging that

defendants, Warden of the Metropolitan Correctional Center ("MCC") and Dr. Bussanich,

clinical director of the MCC, violated his rights to adequate medical treatment. Specifically,

Rodriguez alleges that he was injured when he fell from the stairs while at the MCC, and that

due to the inadequate medical attention provided by the MCC officials, he suffers from ongoing

pain and complications from his injuries.

        Defendant Bussanich has moved for judgment on the pleadings pursuant to Rule 12(c) of

the Federal Rules of Civil Procedure. Bussanich advances several arguments: (1) failure to

exhaust available administrative remedies as required by the Prison Litigation Reform Act (the

"PLRA"), 42 U.S.C. § 1997e; (2) failure to plead adequately the personal involvement of

--------

[1] Although Rodriguez makes no mention of Bivens in his complaint, the Honorable Paul A. Crotty issued
an order of service on August 1, 2013, construing the complaint to allege a Bivens claim.

Bussanich; and (3) protection of Bussanich from suit under the doctrine of qualified immunity. For the reasons set forth below, I recommend that Bussanich's motion be DENIED.

## BACKGROUND

The following facts alleged by Rodriguez in his pleadings and the documents attached thereto are assumed to be true for the purposes of this report and recommendation. In re September 11 Litig., 751 F.3d 86, 90 (2d Cir. 2014) (citing Burnette v. Carothers, 192 F.3d 52, 56 (2d Cir. 1999)).

**I.    Factual Background**

On November 28, 2012, while walking down the stairs in unit 9 north, tier 2, of the MCC, Rodriguez tripped in a hole in the steps and fell. As a result of the fall, Rodriguez temporarily lost consciousness and sustained injuries to his head and back. Rodriguez was transported to the New York Downtown Hospital ("NYDH"), where he regained consciousness. After Rodriguez was admitted to the NYDH, x-rays were taken and two sedatives were prescribed to relieve the pain from his injuries. Upon completion of these procedures, Rodriguez was discharged from the hospital and transported back to the MCC, despite his request for a more extensive examination of his injuries.

Rodriguez alleges several complications attributable to the accident, which include "persistent pain in his head and back," sleep loss, "pain along [the] right upper leg," habitual dislocation of the shoulder(s), temporary blindness following his fall and blurry vision after regaining sight, "serious bowel movement irregularities," bloody stool, difficulty with his short-term memory, depression, and auditory hallucinations. (Compl. at 3, 9-10.) On three occasions Rodriguez grieved these conditions using the MCC's Inmate Request to Staff forms: (1) on December 14, 2012, to the medical department complaining of blurry vision and continued pain

in his back, neck, and right leg, and requesting a change in his existing medication, which had

worsened his headaches and resulted in nausea, vomiting, and diarrhea; (2) on December 14,

2012, to the psychology department requesting an appointment to address his memory loss,

depression, sleep loss, and auditory hallucinations; and (3) on January 1, 2013, to Bussanich in

Health Services, complaining again of pain in his back, neck, shoulder, and right leg, blurry

vision, vomiting, and diarrhea resulting from his medication.

On December 18, 2012, Rodriguez similarly grieved these conditions in an email to

Health Services addressed to Bussanich and Ms. Okuth, in which he detailed his injuries and

accused Bussanich and Okuth of ignoring his complaints:

> I am in dire need of being seen immediately by a specialist at an outside hospital.
> I was given Meloxicam and it is making my headaches stronger, I hear voices in
> my head, I have diarrhea, and I am vomitting [sic]. I hit my head very hard and
> was shaking and going into convulsions and yet [sic] still every time I tell you
> about these things you continue to send me back to my unit and incorrectly
> diagnose me and give me medication that makes me sick and worsens my
> condition . . . . I implore you to please send me immediately to the outside
> hospital. My life is at stake and MCC is not a medical facility.

(Compl. at 15 (emphases omitted).)

Additionally, a paralegal at the office of Julia Gatto, attorney for Rodriguez, wrote a

letter on January 9, 2013, to the legal and medical departments at the MCC detailing the

circumstances of the November 28, 2012 accident, describing Rodriguez's medical condition,

and requesting immediate medical assistance. The letter indicated that Rodriguez was not

receiving any pain medications at that time. It also noted that Rodriguez had never been provided

with a diagnosis for his bloody stool and that he "remained untreated." (Compl. at 10.) The letter

requested pain medication, an eye examination, an examination of Rodriguez's bowels, a

psychiatric evaluation, and the presence of a Spanish-speaking staff member at Rodriguez's

medical appointments so information could be communicated reliably. These requests for

appointments and treatment were made due to "the alarming nature of Mr. Paulino-Rodriguez's deteriorating physical and mental health." (Compl. at 10.) On January 10, 2013, the paralegal again requested urgent medical attention for Rodriguez and attached to his letter copies of the December 2012 and January 2013 grievances along with Rodriguez's email to Bussanich and Okuth.

Rodriguez seeks injunctive relief in the form of medical treatment for his conditions and repair of the broken steps as well as an award of $2.5 million in compensatory damages.[2] He also requests legal assistance in Spanish.

## II.     Procedural Background

On May 21, 2013, Rodriguez filed his complaint against the federal Bureau of Prisions ("BOP"), Insurance of the MCC, and the Medical Administration of the MCC ("Medical Administration").[3] On August 1, 2013, construing Rodriguez's complaint to constitute a Bivens action, Judge Crotty dismissed Rodriguez's claims against the institutional defendant Insurance of the MCC and replaced the institutional defendants BOP and Medical Administration with "Warden, Metropolitan Correctional Facility" and "John or Jane Doe, head of Medical Care at Metropolitan Correctional Facility," respectively. On August 6, 2013, Judge Crotty referred Rodriguez's case to me for general pretrial supervision and to report and recommend on any dispositive motion. On October 1, 2013, the United States Attorney for the Southern District of New York identified defendant "John or Jane Doe" as Bussanich, the clinical director of the

---

[2] Because Rodriguez is no longer incarcerated at the MCC, any claims for injunctive relief are moot. See Thompson v. Carter, 284 F.3d 411, 415-16 (2d Cir. 2002) (affirming dismissal of inmate's claims for injunctive and declaratory relief against some defendants as moot because he was no longer incarcerated at the facility).

[3] Rodriguez's complaint was dated May 21, 2013. *Pro se* papers for incarcerated individuals are deemed filed on the date they are given to correctional authorities for mailing to the court. See Houston v. Lack, 487 F.3d 266, 270, 276 (1988). See also Williams v. United States, 07 Civ. 3018 (RJS)(THK), 2010 WL 963474, at *4 n.1 (S.D.N.Y. Feb. 25, 2010), report and recommendation adopted, 2010 WL 963465 (Mar. 16, 2010) (applying this rule in a Bivens action)

MCC, and on October 2, 2013, the Court directed that the caption for this case be amended accordingly to replace the unnamed defendant with Dr. Bussanich. The United States Attorney has been unable to identify the Warden due to the vacancy of the office at the time of Rodriguez's incident.

On December 30, 2013, defendant Bussanich filed his answer to Rodriguez's complaint. Rodriguez filed an affirmation in opposition to motion, dated February 3, 2014, with an attached letter written in Spanish. This document was apparently intended to serve as an opposition in anticipation of Bussanich's motion for judgment on the pleadings, which had not been filed at the time. On February 26, 2014, the Court instructed Rodriguez to file another opposition, in English, after the motion for judgment on the pleadings had been filed.

After three requests for extension of time, Bussanich filed his motion for judgment on the pleadings on April 8, 2014, attaching a declaration from Jacqueline Facey, a legal assistant at the MCC. Because Rodriguez never opposed the motion despite the Court's earlier instruction to do so, Bussanich's motion for judgment on the pleadings was deemed fully submitted on May 28, 2014.

## DISCUSSION

### I.    Standard of Review

A party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). When reviewing a Rule 12(c) motion, the Court applies the same standard applicable to a Rule 12(b)(6) motion to dismiss. Hayden v. Paterson, 594 F.3d 150, 160 (2d Cir. 2010). Under that standard, the Court must take "factual allegations [in the complaint] to be true and draw[ ] all reasonable inferences in the plaintiff's favor." Harris v. Mills, 572 F.3d 66, 71 (2d Cir. 2009) (citation omitted). The Court's function is

"not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985) (citation omitted). The Court should not dismiss the complaint if the plaintiff has provided "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that [the Court] must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id.

"On a [Rule] 12(c) motion, the court considers 'the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case.'" L–7 Designs, Inc. v. Old Navy, 647 F.3d 419, 422 (2d Cir. 2011) (quoting Roberts v. Babkiewicz, 582 F.3d 418, 419 (2d Cir. 2009)). In addition, the Court may review any materials incorporated by reference in one of the pleadings and, documents that, although not specifically incorporated by reference, are integral to the complaint. Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004) (citations and quotation marks omitted). The Court, however, should exclude from its consideration materials presented outside of the pleadings. See Chambers v. Time Warner, Inc., 282 F.3d 147, 154 (2d Cir. 2002).

The Court may not grant an unopposed motion, as in this case, without reviewing the record and determining whether there is sufficient support to do so. See Kinlaw v. Walsh, 10 Civ. 07539 (RMB)(JLC), 2012 WL 2548437, at *1 (S.D.N.Y. June 29, 2012); see also Vt. Teddy Bear Co. v. 1–800 Beargram Co., 373 F.3d 241, 246 (2d Cir. 2004) ("[C]ourts, in considering a

6

motion for summary judgment, must review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law" (citation and internal quotation marks omitted)).

When faced with a *pro se* litigant, the Court must "construe [the] complaint liberally and interpret it to raise the strongest arguments that [it] suggest[s]," Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010) (citation and internal quotation marks omitted) (alterations in original), "particularly when [the pleadings] allege civil rights violations," McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004). Accord Haines v. Kerner, 404 U.S. 519, 520-21 (1972). "Even in a *pro se* case, however, . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Chavis, 618 F.3d at 170 (citation and internal quotation marks omitted). Thus, although the Court is "obligated to draw the most favorable inferences" that the complaint supports, it "cannot invent factual allegations that [the plaintiff] has not pled." Id.

## II.   Exhaustion of Administrative Remedies

Bussanich first argues that Rodriguez did not comply with the BOP's grievance procedures and, therefore, his action is barred under the PLRA.

### A.   Legal Standard

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . , or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This exhaustion requirement applies equally to Bivens claims, Porter v. Nussle, 534 U.S. 516, 524 (2002), and is mandatory "regardless of the fit between a prisoner's prayer for relief and the administrative remedies possible," Booth v. Churner, 532 U.S. 731, 739

(2001). It covers "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter, 534 U.S. at 532 (citation omitted).

"[F]ailure to exhaust is an affirmative defense under the PLRA, and [ ] inmates are not required to specially plead or demonstrate exhaustion in their complaints." Jones v. Bock, 549 U.S. 199, 216 (2007); accord 13D Charles Alan Wright, Arthur R. Miller, Edward H. Cooper & Richard D. Freer, Federal Practice and Procedure: Jurisdiction § 3573.4 (3d ed. 2008). Dismissal under Rule 12(c) for non-exhaustion is appropriate only if a plaintiff's failure to exhaust is evidenced on the face of the complaint. Jones, 549 U.S. at 214; McCoy v. Goord, 255 F. Supp. 2d 233, 251 (S.D.N.Y. 2003) ("If nonexhaustion is clear from the face of the complaint (and incorporated documents), a motion to dismiss pursuant to Rule 12(b)(6) for failure to exhaust should be granted."); see also Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 74 (2d Cir. 1998) ("An affirmative defense may be raised by a [Rule 12(b)(6) motion to dismiss], without resort to summary judgment procedure, if the defense appears on the face of the complaint.").

**B.    The Administrative Remedy Program**

The MCC is a facility operated by the BOP. "The BOP provides [inmates with] a grievance procedure applicable to confinement-related issues." Johnson v. Testman, 380 F.3d 691, 693 (2d Cir. 2004). "The procedure is called the Administrative Remedy Program ("ARP"), and consists of up to four steps, depending upon the circumstances." Id. See 28 C.F.R. § 542.10-542.15. In Rodriguez's case, an inmate is required first to seek informal resolution of his grievance through an internal procedure(s) established by the Warden. Id. 28 C.F.R. § 542.13(a). If the matter is not resolved, he must file an Administrative Remedy Request using the appropriate form ("BP-9") at the MCC addressed to the Warden within 20 days of the incident.

Id. 28 C.F.R. § 542.14(a). If the inmate is not satisfied with the MCC's response, he may file a Regional Appeal on the appropriate form ("BP-10") to the Regional Director within 20 days of the Warden's response. Id. 28 C.F.R. § 542.15(a). If the inmate is still not satisfied with the Regional Director's response, he may further appeal the decision to the General Counsel, Central Office in Washington D.C., within 30 days of the Regional Director's response. Id. 28 C.F.R. § 542.15(a). At all stages of the Administrative Remedy Program, if the inmate does not receive a response within the time allotted for reply, he may consider the absence of response to be a denial at that level. 28 C.F.R. § 542.18.

### C.    Rodriguez's Grievances

Rodriguez states that he filed his grievances at the MCC, requesting "emergency medical attention" and "therapy." (Compl. at 4.)  Rodriguez did not receive a response to his grievances. Rodriguez attached copies of Inmate Request to Staff forms addressed to Health Services and the medical and psychology departments at the MCC. He also attached the email sent to Bussanich and Okuth with the subject line "Request to Staff" describing his illness. Prompted by the Southern District of New York's form complaint, which asks the plaintiff to describe "all efforts to appeal to the highest level of the grievance process," Rodriguez answered that he "wrote a BP9 to the administration of MCC. Step two was to the office of the F.B.O.P., step three was to the federal civil court." (Id.) Rodriguez, however, did not attach any copies of these forms to his complaint.

### D.    Whether Rodriguez Properly Exhausted His Remedies

Bussanich asserts that Rodriguez failed to exhaust available administrative remedies because he failed to pursue relief beyond the initial stage of informal resolution with respect to two of the four grievances and similarly failed to advance beyond the second stage (BP-9) with

respect to the remaining grievances. As evidence of non-exhaustion, Bussanich submits the declaration of Facey describing the actual efforts taken by Rodriguez to seek administrative remedies.

Jones precludes Bussanich's argument. If exhaustion is not an affirmative pleading requirement, then Rodriguez cannot be penalized for what he does not say in his pleading about his efforts to exhaust. Thus, and especially in light of the liberal *pro se* pleading requirements, Rodriguez's statements of the efforts he took cannot be construed to mean that he did not pursue the proper avenues for exhaustion. See Jones, 549 U.S. at 214 ("Although exhaustion was a 'centerpiece' of the PLRA . . ., failure to exhaust was notably not added [to the four enumerated grounds for preliminary judicial screening]. There is thus no reason to suppose that the normal pleading rules have to be altered to facilitate judicial screening of complaints specifically for failure to exhaust.").

Rodriguez has not pled that he did not exhaust; and at this stage in the litigation, he does not need to demonstrate that he did. See id. at 216 (holding that prisoners need not demonstrate exhaustion in their complaints); Pratt v. City of New York, 929 F. Supp. 2d 314, 318 (S.D.N.Y. 2013) (finding when amended complaint did not establish plaintiff failed to comply with grievance procedures, "scope of proper [A.M.K.C.] grievance procedure, [and] whether the plaintiff followed that procedure properly . . . should [not] be determined on . . .  a motion to dismiss"); Smalls v. Jummonte, 08 Civ. 04367 (DAB), 2010 WL 3291587, at *3 (S.D.N.Y. Aug. 13, 2010) ("While the evidence submitted by Defendants suggests that Plaintiff did not follow the DOC's established grievance procedure, nonexhaustion is not apparent from the face of the Complaint, and Plaintiff must be afforded the opportunity to respond to Defendants' evidence with his own, if any."); see also Johnson v. Westchester Cnty. Dep't of Corr. Medical Dep't, 10

Civ. 06309 (JGK), 2011 WL 2946168, at *2 (S.D.N.Y. July 19, 2011) (finding that plaintiff's

allegations that he filed a complaint, "followed all Rules and [Procedures]," and that "[t]he

inmate Grievance within this facility fails to maintain an adequate grievance system" lacked

specifics, but was not valid basis for dismissal); Bailey v. Fortier, 09 Civ. 00742 (GLS)(DEP),

2010 WL 4005258, at *6 (N.D.N.Y. Aug. 30, 2010) ("It should be noted that courts are generally

[hesitant] to dispose of the exhaustion defense on a motion to dismiss, and ordinarily will dismiss

a complaint at that stage only if it is patently clear from the face of plaintiff's complaint that

exhaustion has not occurred and there is no basis to excuse PLRA exhaustion requirement."

(citation omitted)), report and recommendation adopted, 2010 WL 3999629 (Oct. 12, 2010).

        Moreover, evidence submitted by Bussanich suggesting that Rodriguez did not in fact

exhaust will not be considered at this stage of the litigation for the same reason that such

inference must be apparent from the face of the complaint. Smalls, 2010 WL 3291587, at *3

(excluding evidence of non-exhaustion submitted by defendants outside of the pleadings in

disposing motion for judgment on the pleadings); Ellis v. Guarino, 03 Civ. 6562 (DAB)(AJP),

2004 WL 1879834, at *5 (S.D.N.Y. Aug. 24, 2004) ("[D]ismissal under Rule 12(b)(6) is only

appropriate where failure to exhaust is apparent from the face of the complaint." (internal

quotation marks omitted) (citing McCoy, 255 F. Supp. at 249)).

### E.    Converting Motion for Judgment on the Pleadings into Motion for Summary Judgment

        Bussanich submits Facey's declaration, with additional documents, that purportedly

shows Rodriguez's failure to exhaust. But, as discussed above, these documents constitute

evidence outside of the pleadings. For the Court to consider this evidence, Bussanich's motion

for judgment on the pleadings must be converted into a motion for summary judgment. Sira, 380

F.3d at 66 ("[a] district court must convert a motion for judgment on the pleadings to one for

summary judgment if the motion includes material outside the pleadings and that material is not excluded by the court" (citations and internal quotation marks omitted)); See Kopec v. Coughlin, 922 F.2d 152, 155-56 (2d Cir. 1991) ("when presented with material outside of the pleadings pursuant to a Rule 12(b)(6) motion to dismiss, [a] district court must either disregard the material" or convert the motion into one for summary judgment to consider the extrinsic evidence). For the reasons stated below, the Court declines to convert *sua sponte* Bussanich's motion for judgment on the pleadings into a motion for summary judgment.

First, if the Court were to convert the motion, "all parties [must be afforded] the opportunity to present supporting material." Friedl v. City of New York, 210 F.3d 79, 83 (2d Cir. 2000). This is especially true when a plaintiff proceeds *pro se* and is provided no notice that the motion might be converted. Hernández v. Coffey, 582 F.3d 303, 307-08 (2d Cir. 2009) ("*[P]ro se* parties must have 'unequivocal' notice of the meaning and consequences of conversion to summary judgment."); cf., e.g., Mateo v. Alexander, 08 Civ. 08797 (RJH)(DCF), 2010 WL 431718, at *2 (S.D.N.Y. Feb. 9, 2010) (converting motion when defendants notified *pro se* plaintiff "that the Court might choose to treat the motion as one for summary judgment, and that to oppose it, [plaintiff] would need to submit evidence"). Here, there is no indication that Bussanich provided Rodriguez with notice that the motion might be converted pursuant to Local Civil Rule 12.1 of the Local Rules of the United States District Courts for the Southern and Eastern District of New York.

Additionally, although the Court may permit limited discovery exclusively on the issue of exhaustion, such a measure would not serve any desirable judicial end. Cf. Stevens v. City of New York, 12 Civ. 01918 (JPO)(JLC), 2012 WL 4948051, at *3 (S.D.N.Y. Oct. 11, 2012) (discussing that a court must "[b]alanc[e] the need to secure the PLRA's mandates of efficiency

and early resolution of prisoner rights suits against litigants' interest in a just disposition of their suits" (citing McCoy, 255 F. Supp. 2d at 249)). On the contrary, bifurcating discovery, with additional motion practice, creates the potential for complication and delay: indeed, individuals might well be deposed first on exhaustion and again on the merits. The Court does not anticipate that full fact discovery will be sufficiently laborious, moreover, to counter plaintiff's interest in a timely disposition of his suit.

For these reasons, the Court declines to convert this motion *sua sponte* into a motion for summary judgment. See, Pratt, 929 F. Supp. 2d at 319 (declining to convert motion to dismiss into motion for summary judgment because "the parties [were] entitled to an opportunity to take discovery and submit additional relevant evidence, [but] the parties [had] not yet been allowed such an opportunity" (citing Hernández, 582 F.3d at 309)).

## III.    Deliberate Indifference to Serious Medical Needs[4]

Rodriguez has alleged that Bussanich was deliberately indifferent to his medical needs in violation of the Eighth Amendment.[5] "The Cruel and Unusual Punishments Clause of the Eighth

---

[4] Bussanich combines his arguments on deliberate indifference and personal involvement. While a claim of deliberate indifference necessarily involves a discussion of the accused's personal involvement and, *vice versa*, the two entail distinct analyses under Bivens. Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994) (holding that to establish an Eighth Amendment violation under § 1983 based on deprivation of adequate medical care, a prisoner must prove deliberate indifference to his serious medical needs); Barbera v. Smith, 836 F.2d 96, 99 (2d Cir. 1987) (holding that a Bivens action requires that plaintiff allege personal involvement of each defendant in the putative constitutional violation). As such, the Court analyzes the two issues separately.

[5] Because Rodriguez was a federal pretrial detainee rather than a convicted prisoner, the Court construes his allegations to arise under the Due Process Clause of the Fifth Amendment, which is the proper basis for his claims. See Caiozzo v. Koreman, 581 F.3d 63, 69 (2d Cir. 2009) (stating that the Eighth Amendment does not apply to pretrial detainees; rather, "a person detained prior to conviction receives protection against mistreatment at the hands of prison officials under the Due Process Clause of the Fifth Amendment if the pretrial detainee is held in federal custody, or the Due Process Clause of the Fourteenth Amendment if held in state custody."); Lloyd v. Lee, 570 F. Supp. 2d 556, 570 (S.D.N.Y. 2008); cf. Ingraham v. Wright, 430 U.S. 651, 671 n.40 (1977) ("Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions. . . . [T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of

Amendment imposes a duty upon prison officials to ensure that inmates receive adequate medical care." Salahuddin v. Goord, 467 F.3d 263, 279 (2d Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825 (1994)). "Yet not every lapse in medical care is a constitutional wrong." Id. Rather, inadequacy in medical care violates the Eighth Amendment only when a prison official manifests "deliberate indifference to [an inmate's] serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976) ("The infliction of [ ] unnecessary suffering is inconsistent with contemporary standards of decency" and "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment" (citation and internal quotation marks omitted)). To establish deliberate indifference, a plaintiff must demonstrate both that the deprivation of care is sufficiently serious—the objective component—and that the official charged with the deprivation acted with deliberate indifference—the subjective component. See Farmer v. Brennan, 511 U.S. 825, 834 (1994); Salahuddin, 467 F.3d at 279-81.

## A.      Serious Deprivation—the Objective Component

### 1.      Legal Standard

To satisfy the objective component, the alleged deprivation of adequate medical care must be "sufficiently serious." Farmer, 511 U.S. at 834; See Wilson v. Seiter, 501 U.S. 294, 298 (1991); Hudson v. McMillian, 503 U.S. 1, 9 (1992) ("Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are serious." (citation and

---

law."); City of Revere v. Massachusetts General Hospital, 463 U.S. 239, 244 (1983). Because, however, "it is plain that an unconvicted detainee's rights are at least as great as those of a convicted prisoner," courts apply the same analysis under the Due Process Clause as they would under the Eighth Amendment. Weyant v. Okst, 101 F.3d 845, 856 (2d Cir. 1996); see also Nielsen v. Rabin, 746 F.3d 58, 63 n.2 (2d Cir. 2014) (citing Caiozzo, 581 F.3d at 72).

internal quotation marks omitted)). "Determining whether a deprivation is an objectively serious deprivation entails two inquiries": (1) whether the detainee was "actually deprived of adequate medical care" and (2) whether the inadequacy in medical care was "sufficiently serious." Salahuddin, 467 F.3d at 279-80. The first inquiry is satisfied when the prison official fails "to take reasonable measures in response to a medical condition." Id. at 280 (citing and quoting Farmer, 511 U.S. at 847) (internal quotation marks omitted). The second inquiry "requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." Id. (citation omitted)

### 2.   Application

Rodriguez attached to his complaint a form request and an email both addressed to Bussanich personally, detailing the state of his medical condition and requesting assistance. Rodriguez informed Bussanich that during his fall he hit his head "very hard" and began convulsing. (Compl. at 15.) He complained of continued pain in his neck, shoulder, and right leg, a "very painful headache," diarrhea, blurry vision, vomiting, and auditory hallucinations. (Compl. at 12.) In these correspondences, Rodriguez begged to be seen at a hospital, indicating that he believed his life was at stake. A letter from the paralegal of his attorney, which was attached to his complaint, also notes the severity of Rodriguez's condition: "These requests [for treatment] are made considering the alarming nature of Mr. Paulino-Rodriguez's deteriorating physical and mental health. . . . If Mr. Paulino-Rodriguez's physical and mental health is not immediately considered, we fear that future complications may severely jeopardize his wellbeing." (Compl. at 10.)

 Rodriguez alleges the only treatment he received was painkillers. He accuses Bussanich of repeatedly ignoring his condition and sending him back to his unit without a proper diagnosis

and with medication that made his condition worse. (Compl. at 15.) Rodriguez appears to have suffered physical pain, vomiting, diarrhea, blurry vision, and auditory hallucinations, without any other treatment than pain killers, for a period of at least six months: from the date of his fall on November 23, 2013, to the time of the filing of his complaint on May 23, 2013. (Compl. at 1, 15.)

The Court finds that the combination of Bussanich's failure to take reasonable measures in response to Rodriguez's serious medical conditions and the resulting harm of this inaction are sufficiently serious. See e.g., Morrison v. Mamis, 08 Civ. 4302 (PAC)(AJP), 2008 WL 5451639, at *8 (S.D.N.Y. Dec. 18, 2008), report and recommendation adopted, 2009 WL 2168845 (July 20, 2009) (holding that severe back pain over a period of approximately seven months and migraine headaches that did not respond to painkillers constituted serious medical conditions); Palmer v. New York Dep't of Corr., 13 Civ. 2529 (PKC), 2014 WL 1338068, at *4 (S.D.N.Y. Mar. 31, 2014) (holding that "frequent pain and blurred-blacken double vision" are sufficiently serious).

Accordingly, Rodriguez has pled facts sufficient to satisfy the objective component of deliberate indifference.

**B.     Deliberate Indifference—the Subjective Component**

**1.     Legal Standard**

Pleading a constitutional deprivation alone is insufficient for establishing an Eighth Amendment violation. A plaintiff must also plead the subjective component: that the charged official acted with a "sufficiently culpable state of mind." Farmer, 511 U.S. at 834 (citing Wilson, 501 U.S. at 297). For inadequate medical care claims, the charged official possesses that state of mind when he acts or fails to act with "deliberate indifference" to an inmate's health or

16

safety. Id. (citing Wilson, 501 U.S. at 302-303). In defining deliberate indifference, the Supreme

Court has adopted subjective recklessness as the standard, requiring "more than mere

negligence" but less than "purpose of causing harm" or "knowledge that harm will result." Id. at

835 (citing Estelle 429 U.S. at 97; Hudson, 503 U.S. at 6–7; Whitley v. Albers, 475 U.S. 312,

320 (1986)). Rather, deliberate indifference is satisfied when the charged official is aware of "an

excessive risk to inmate health or safety" posed by the deprivation of care but disregards the risk.

Id. at 837.

### 2.    Application

Rodriguez complains of multiple symptoms—persistent pain in his head, neck, shoulder

and right leg and, perhaps, more alarmingly, chronic headaches, bloody stool, nausea, vomiting,

depression and auditory hallucinations. These conditions, which persisted for a prolonged period

of time without response to painkillers, present a serious risk of harm to his health and safety that

Bussanich was not free to ignore. See Baptiste v. Warden at Ottisville, FCI New York, 09 Civ.

5523 (AKH), 2010 WL 3185748, at *8 (S.D.N.Y. Aug. 11, 2010) (finding deliberate indifference

where the treating physician was aware that the current diagnosis was one of many possible

causes of an inmate's breathing problems and, despite this knowledge, watched the inmate

endure "pain and suffering and loss of eyesight, instead of discontinuing the [current] therapy

and performing additional tests to arrive at a more conclusive diagnosis." (internal quotation

marks omitted)); Ahart v. Willingham, 05 Civ. 1016 (JCH)(HBF), 2007 WL 842006, at *4 (D.

Conn. Mar. 15, 2007) (finding plaintiff sufficiently pled deliberate indifference where the

treating physician did not timely order an examination for glaucoma despite the inmate's

repeated complaints of disease-related symptoms and did not comply with physician directives

regarding follow-up).

Rodriguez and his legal representative, through several correspondences, alerted Bussanich and the medical department to the seriousness of Rodriguez's condition and the need for urgent treatment. At this stage of the litigation, Rodriguez need not demonstrate actual receipt or inspection of these correspondences; rather, he is entitled to the Court's reasonable inference that Bussanich "in fact received the letter, read it, and thereby became aware of the alleged conditions of which [Rodriguez] complained." Grullon v. City of New Haven, 720 F.3d 133, 141 (2d Cir. 2013) (holding that at the pleading stage, even if plaintiff had no knowledge or information as to what became of his letter after he sent it, if the letter was appropriately addressed and sent through proper means, he or she would be entitled to the reasonable inference that the charged official—the recipient—in fact received the letter, read it, and thereby became aware of the contents of the letter).

Additionally, Rodriguez "implored" and repeatedly requested that he be seen by an outside specialist regarding his mental conditions. Bussanich, however, refused. This denial of access to medical personnel qualified to exercise judgment about Rodriguez's conditions further supports an allegation of deliberate indifference. See Hemmings v. Gorczyk, 134 F. 3d 104, 109 (2d Cir. 1998) (finding sufficient allegations of deliberate indifference to survive a motion to dismiss where medical staff performed some treatment but refused for two months to send plaintiff to outside specialist who later described plaintiff's disease symptoms as "classic" and expressed shock at the prison medical staff's failure to diagnose and treat the injury).

The Court recognizes that "mere disagreement over the proper treatment does not create a constitutional claim." Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998). Rodriguez, however, alleges more than a disagreement about the course of treatment provided. He alleges that Bussanich and the medical department of the MCC ignored his symptoms, sending him back

18

to his cell without diagnosis or treatment. Even though Rodriguez did receive some treatment for

his pain, there is no indication that he received any treatment for his blurry vision, bloody stool,

nausea, vomiting, or auditory hallucinations. Furthermore, even if the facts suggest that MCC

staff provided some medical treatment, thereby "substantially weaken[ing] his claim of

deliberate indifference," the Court cannot conclude that Rodriguez's claim is "so completely

devoid of merit as to justify dismissal at this early stage." Hemmings, 134 F.3d at 108-09.

Taking all the allegations in the complaint to be true, the Court concludes that Rodriguez

has pled a serious deprivation of a constitutional right and direct knowledge and disregard of the

risk of harm by Bussanich. This is sufficient to survive a motion for judgment on the pleadings.

See Baptiste, 2010 WL 3185748, at *8 (motion to dismiss denied where plaintiff sufficiently

alleged deliberate indifference by defendant who failed to properly diagnose and treat plaintiff);

Ahart, 2007 WL 842006, at *4 (same).

## IV.   Personal Involvement

Related to the Court's analysis of whether Rodriguez has pled an Eighth Amendment

violation is Bussanich's argument that he be dismissed because Rodriguez failed to allege his

personal involvement in a violation of Rodriguez's constitutional rights. Plaintiffs bringing

constitutional claims against federal agents under Bivens must allege facts sufficient to show that

all defendants, including those in supervisory roles, were personally involved in causing the

alleged harm to the degree necessary to satisfy the elements of the alleged constitutional claim.

See Iqbal, 556 U.S. at 676-77. A plaintiff can survive a motion to dismiss by alleging facts

showing that a defendant was personally involved in the violation in at least one of five ways:

> (1) the defendant participated directly in the alleged constitutional violation, (2)
> the defendant, after being informed of the violation through a report or appeal,
> failed to remedy the wrong, (3) the defendant created a policy or custom under
> which unconstitutional practices occurred, or allowed the continuance of such a

policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995). See Doe v. Whidden, 557 F. App'x 71, 72 n.1 (2d Cir. 2014) (declining to rule on Iqbal's effects on "the standards for establishing supervisory liability as articulated in Colon v. Coughlin"); Hernandez v. Goord, 01 Civ. 9585 (SHS), 2013 WL 2355448, at *7 (S.D.N.Y. May 29, 2013) ("[E]ven after . . . Iqbal, these 'categories supporting personal liability of supervisors still apply as long as they are consistent with the requirements applicable to the particular constitutional provision alleged to have been violated.'" (quoting Qasem v. Toro, 737 F. Supp. 2d 147, 151-52 (S.D.N.Y. 2010))); D'Olimpio v. Crisafi, 718 F. Supp. 2d 340, 347 (S.D.N.Y. 2010), aff'd, 462 F. App'x 79 (2d Cir. 2012) ("[T]he degree of personal involvement varies depending on the constitutional provision at issue . . . . 'Where the constitutional claim does not require a showing of discriminatory intent, but instead relies on the unreasonable conduct or deliberate indifference standards of the Fourth and Eighth Amendments, the personal involvement analysis set forth in Colon v. Coughlin may still apply.'" (quoting Sash v. United States, 674 F. Supp. 2d 531, 544 (S.D.N.Y. 2009))); Thomas v. Calero, 824 F. Supp. 2d 488, 506 (S.D.N.Y. 2011).

Bussanich was the Clinical Director at the MCC at all times relevant to this action and was directly involved in the treatment of Rodriguez's condition. The complaint indicates that Bussanich repeatedly failed to take reasonable measures in response to Rodriguez's serious medical condition despite being informed of these conditions by Rodriguez verbally, through a grievance, an email, and letters. Rodriguez communicated his deteriorating condition to Bussanich, but Bussanich "continue[d] to send [him] back to [his] unit and incorrectly diagnose[d] [Rodriguez] and [gave him] medication that [made him] sick and worsen[ed] [his]

condition." (Compl. at 15.) Contrary to Bussanich's assertion, Rodriguez goes beyond providing mere conclusory statements that Bussanich was personally involved.

For the reasons set forth above, Rodriguez has alleged Bussanich's personal involvement. Any remaining doubts or gaps as to his specific involvement are properly resolved beyond the pleading stage of the litigation. Grullon, 720 F.3d at 141 (holding that potential factual issues as to personal involvement could not be resolved without development of a factual record and that dismissal without an opportunity for additional discovery would be premature) (citing Davis v. Kelly, 160 F.3d 917, 922 (2d Cir. 1998)); Jean-Laurent v. Lawrence, 12 Civ. 1502 (JPO), 2014 WL 1282309, at *3 (S.D.N.Y. Mar. 28, 2014) ("[T]he question at [the motion to dismiss stage] is whether [plaintiff] has plausibly alleged [defendant's] personal involvement, not whether he made detailed allegations in support of each element of his claim. Reasonable inferences are permissible to bridge the gaps in a plaintiff's allegations. The purpose of discovery is to fill in those gaps.") (citing Grullon, 720 F.3d at 141); Williams v. Koenigsmann, 03 Civ. 5267 (SAS), 2004 WL 315279, at *5 (S.D.N.Y. Feb. 18, 2004) ("The personal involvement of [the defendants], or lack thereof, is a matter to be explored in discovery. It would be premature to conclude that these defendants were not personally involved in the alleged constitutional violations based solely on a review of the pleadings.").

## V.    Qualified Immunity

Finally, Bussanich argues that Rodriguez's complaint should be dismissed because Bussanich is entitled to qualified immunity. Federal officials "performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Looney v. Black, 702 F.3d 701, 705-06 (2d Cir. 2012) (quoting Harlow v. Fitzgerald,

457 U.S. 800, 818 (1982)). "Defendants are entitled to qualified immunity if they can establish

either that (1) a constitutional right was [not] violated or (2) the right was not clearly

established." Royal Crown Day Care v. Dep't of Health & Mental Hygiene of City of New York,

746 F.3d 538, 543 (2d Cir. 2013) (citation and internal quotation marks omitted) (alteration in

original).

While "a defense of qualified immunity should ordinarily be decided 'at the earliest

possible stage in litigation,'" Castro v. United States, 34 F.3d 106, 112 (2d Cir. 1994), it is

appropriate to delay a decision where further discovery is necessary. See id. (finding the need for

discovery on the reasonableness of defendant's conduct a justification to vacate the grant of a

motion for summary judgment on qualified immunity grounds). For qualified immunity to bar

suit at the motion to dismiss stage, "[n]ot only must the facts supporting the defense appear on

the face of the complaint, but, as with all Rule 12(b)(6) motions, . . . the plaintiff is entitled to all

reasonable inferences from the facts alleged, not only those that support his claim, but also those

that defeat the immunity defense." McKenna v. Wright, 386 F.3d 432, 436 (2d Cir. 2004)

(citations omitted).

Bussanich contends that he is entitled to qualified immunity because Rodriguez cannot

establish his personal involvement in the violation of a constitutional right. He does not argue

that the law was not clearly established or that a reasonable doctor would have acted similarly.

Rodriguez's claims are sufficient, however, to allege a violation of his rights due to medical

deliberate indifference, specifically due to a series of treatment failures by Bussanich.

The defense of qualified immunity may be applicable here, but a determination on this

issue must wait until the facts are further developed because the facts supporting the defense do

not "appear on the face of the complaint." McKenna, 386 F.3d at 436. See e.g., Sereika v. Patel,

411 F. Supp. 2d 397, 407 (S.D.N.Y. 2006) ("Dismissal on the basis of a qualified immunity defense is not appropriate where there are facts in dispute that are material to a determination of reasonableness."); Giambalvo v. Sommer, 10 Civ 6774 (JPO), 2012 WL 4471532, at *6-7 (S.D.N.Y. Sept. 19, 2012) (denying motion to dismiss on qualified immunity grounds to "await factual development relating to whether and how defendant prison officials may have caused Plaintiff to suffer . . ."). Accordingly, I recommend that Bussanich's motion to dismiss Rodriguez's claims based on qualified immunity be denied.

## CONCLUSION

For these reasons, I recommend that Bussanich's motion for judgment on the pleadings pursuant to Rule 12(c) be DENIED. This case was filed May 2013, and no discovery has been conducted to date. Accordingly, by separate order, the Court will schedule an Initial Pretrial Conference in order to set a discovery schedule. Any application for a stay of discovery must be addressed to Judge Crotty.

\*                    \*                    \*

## NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F)). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Paul A. Crotty at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1);

Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Crotty. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).

**SO ORDERED.**

_____

SARAH NETBURN

United States Magistrate Judge

DATED:       New York, New York
             August 5, 2014

cc:          Luis Paulino-Rodriguez (*By Chambers*)
             Reg# 46541-179
             CI Reeves I & II
             P.O. Box 1560
             Pecos, NY 79772